**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------

| | |
|---|---|
| In re: | : |
| | :   **Chapter 11** |
| **ST. FRANCIS' HOSPITAL,** | : |
| **POUGHKEEPSIE, NEW YORK,** *et al.*,[1] | :   **Case No. 13-37725** |
| | : |
| **Debtors.** | :   **(Jointly Administered)** |

-----------------------------------------------------------------

### FINAL ORDER: (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION SECURED, SUPERPRIORITY FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, AND 364 AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363; AND (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION INDENTURE TRUSTEE AND THE ARCHDIOCESAN PENSION PLAN PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364

Upon consideration of the motion dated December 17, 2013 (Dkt. No. 13) (the "***Motion***")

filed by St. Francis' Hospital, Poughkeepsie, New York ("***St. Francis***") and its affiliated debtors,

as debtors in possession (collectively, the "***Debtors***") in these cases, pursuant to sections 105, 361,

362, 363, 364 and 507(b) of title 11 of the United States Code (the "***Bankruptcy Code***"), Rules

2002, 4001, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy***

***Rules***"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York

(the "***Local Rules***") granting the following relief:

      a.       Authorization under sections 364(c) and 364(d) of the Bankruptcy Code and

Bankruptcy Rule 4001(c) for the Debtors to obtain on a final basis secured, superpriority

postpetition financing ("***DIP Financing***") consisting of: (i) a revolving loan with a principal

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number include: St. Francis' Hospital, Poughkeepsie, New York *d/b/a* Saint Francis' Hospital and Health Care Centers (8503), St. Francis Home Care Services Corporation (3842), SFH Ventures, Inc. *d/b/a* The Hearing Works (0024) ("***SFH Ventures***"), St. Francis Health Care Foundation, Inc. (5066) (the "***Foundation***"), and Saint Francis Hospital Preschool Program (1079).

amount of up to Nine Million Dollars ($9,000,000) (the "***DIP Revolving Loan***") as set forth in that certain Debtor in Possession Revolving Credit and Security Agreement, dated as of December 16, 2013, by and between the Debtors and MidCap Financial, LLC ("***MidCap Financial***"), a true and correct copy of which is attached to this order (the "***Final Order***") as **Exhibit A** (the "***DIP Revolving Credit Agreement***"); and (ii) a term loan in the original principal amount of Eleven Million Dollars ($11,000,000) (the "***DIP Term Loan***"; and together with the DIP Revolving Loan, the "***DIP Loan***") as set forth in that certain Debtor in Possession Term Loan Credit and Security Agreement by and between the Debtors and MidCap Funding V, LLC ("***MidCap Funding***"; and together with MidCap Financial, as lender, the "***DIP Lender***" and, as agent, the "***DIP Agent***"), which shall be substantially in the form as is attached to this Final Order as **Exhibit B** (the "***DIP Term Credit Agreement***"; and together with the DIP Revolving Credit Agreement, the "***DIP Credit Agreement***");

      b.     Authorization under section 363 of the Bankruptcy Code and Bankruptcy Rules 4001(b) and 6004 for the Debtors to use Cash Collateral (as defined below) the Debtors are holding or may obtain, and to use the proceeds from the DIP Financing for: (i) the payment of principal, interest, fees and expenses due DIP Agent under the DIP Credit Agreement; (ii) for general working capital purposes and general corporate purposes relating to the postpetition operations; (iii) repayment of the Emergency Advances (as defined below); (iv) the adequate protection payments as set forth in this Final Order; and (v) payment of the costs and expenses associated with these chapter 11 cases (the "***Cases***"), all in accordance with the terms of the Debtors' proposed budget (the "***Budget***"), a copy of which is annexed hereto as **Exhibit C**;

      c.     Authorization for the Debtors to grant security interests, liens, superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code and liens pursuant to sections 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code), and

related protections to the DIP Agent and DIP Lender to secure all DIP Obligations (as defined herein), in accordance with the provisions of this Final Order and as set forth in DIP Credit Agreement;

d.    Authorization for the Debtors to execute and deliver the DIP Credit Agreement and all other loan documents related thereto (collectively, the "***DIP Documents***") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents and pursuant to the provisions of this Final Order granting the foregoing relief and such other relief as provided herein (the "***Final Order***");

e.    The limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code;

f.    Authorization for the Debtors to continue to use the Cash Collateral (as defined below) of Manufacturers and Traders Trust Company, in its capacity as indenture trustee (the "***Indenture Trustee***") on behalf of the holders of the Bonds (as defined below), The Archdiocesan Pension Plan ("***APP***"), Manufacturers and Traders Trust Company ("***M&T Bank***") and the other Miscellaneous Secured Creditors (as defined below) in accordance with the provisions of this Final Order;

g.    Authorization for the Debtors to grant the DIP Agent allowed, superpriority administrative expense claims in each of the Cases and any Successor Cases (as defined below) for the DIP Financing and all obligations owing thereunder and under the DIP Documents (collectively, and including all "Obligations" as described in the DIP Documents, the "***DIP Obligations***"), as more fully set forth in this Final Order;

h.    Authorization for the Debtors to grant the DIP Agent automatically perfected security interests in and liens on all of the DIP Collateral (as defined below), including, without

limitation, all property constituting Cash Collateral (as defined below), which liens shall be subject to the priorities set forth in Paragraphs 9 and 10 of this Final Order;

i.      Authorization for the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Documents as they become due, including, without limitation, closing/origination fees, unused line fees, collateral management fees, appraisal and/or audit fees, exit fees, the fees and disbursements of the DIP Agent's and DIP Lender's attorneys, advisors, accountants, and other consultants, and any other legal expenses of the DIP Agent and DIP Lender, all to the extent provided by and in accordance with the terms of the respective DIP Documents;

j.      Authorization for the Debtors to use the proceeds of the DIP Financing in all Cases in accordance with the Budget, and as otherwise provided in the DIP Documents;

k.      Authorization for the Debtors to provide adequate protection to the Indenture Trustee, APP and the Miscellaneous Secured Creditors (as defined below) pursuant to the terms of this Final Order based upon the use of their respective collateral and the priming of their liens and subordination of their claims to those of the DIP Agent and DIP Lender;

l.      To vacate and modify the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms of the DIP Documents and this Final Order; and

m.      To waive any applicable stay as provided in the Bankruptcy Rules and provide for the immediate effectiveness of this Final Order.

Upon consideration of the Motion, and the Debtor's proposed budgets attached to the Motion; and upon consideration of the evidence submitted or addressed and the arguments of counsel made at the hearing on January 21, 2014 (the "***Hearing***"); and upon finding that notice of the Hearing was given, in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014;

and upon finding that this Court has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334; and upon finding that venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Hearing to consider the Motion on a final basis having been held and concluded; and all objections, if any, to the relief requested in the Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that granting the relief is fair and reasonable and in the best interest of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and good and sufficient cause appearing therefor, it is hereby found:[2]

A.    _Petition Date_.  On December 17, 2013 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), thereby commencing these Cases.

B.    _Debtors In Possession_.  Each of the Debtors is continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code, and no trustee or examiner has been appointed in these Cases. Founded in 1914, St. Francis has been dedicated to serving the healthcare needs of the residents of Dutchess County for a century.  The Debtors serve more than 125,000 patients annually (excluding added homecare patients) and employ approximately 2,000 full and part-time employees.  In 2012, the Debtors serviced approximately 8,000 inpatient discharges, 32,000 emergency room visits, 38,000 home care visits, and 150,000 outpatient visits.  The hospital has

---

[2] To the extent any portion of these findings constitutes a ruling of law, such portion shall constitute this Court's ruling with respect to the matters so-stated.

333 beds and the capability to serve patients with various physical and mental health issues through the provision of a wide array of medical services, including:

i.    *Emergency Treatment*: The Debtors are the home to the area's only Level II Trauma Center that provides lifesaving care to severely injured patients. Over 9,000 trauma victims are cared for annually, making St. Francis' Level II Trauma Center the busiest Level II Trauma Center in New York State.

ii.    *Mental Health and Addiction Services*: The Debtors are the region's recognized leader in providing mental health services. In addition, the Turning Point at St. Francis is a comprehensive not-for-profit chemical dependency treatment program that provides inpatient medically-managed detoxification from alcohol and all other types of substances, inpatient and outpatient rehabilitation, and a variety of specialized intensive outpatient programs, outpatient counseling, and support groups.

iii.    *Robotic Surgery*: The Center for Robotic Surgery offers patients an array of minimally-invasive surgical approaches through the use of the da Vinci surgical system. Robotic surgery is available for patients undergoing a wide variety of thoracic, urological, gynecological and oncological procedures.

iv.    *Physical and Occupational Therapy*: The Debtors' Physical and Occupational Therapy program treats a whole spectrum of diagnoses, including; neck pain, back pain, knee pain, foot and ankle pain, hand and wrist pain, shoulder pain, pre-surgical and post-surgical therapy needs, auto accidents and sports injuries, fractures, dizziness/light-headedness, balance problems, weakness, cancer related problems and stroke.

v.    *Cancer Treatment*: The Herb & Sue Ann Redl Center for Cancer Care offers advanced treatments for all major cancers including breast, lung, colon, and other digestive tract, prostate, bladder, lymphoma and melanoma.

vi.      *Home Care*:  The Debtors provide home health services, including nursing care, physical therapy, occupational therapy and speech therapy to patients in the comfort of their homes.

C.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

D.      *Committee*.  On December 23, 2013, the United States Trustee (the "***U.S. Trustee***") appointed an Official Committee of Unsecured Creditors (the "***Committee***") in these Cases pursuant to section 1102 of the Bankruptcy Code.

E.      *Notice*.  Notice of the Motion, the relief requested in the Motion, and the Hearing was served by the Debtors on the Notice Parties.  The relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.  Under the circumstances, the notice given by the Debtors of the Motion, the relief requested in the Motion, and the Hearing: (i) was, in the Debtors' good faith belief, the best available under the circumstances; (ii) constitutes due and sufficient notice thereof; and (iii) complies with Bankruptcy Rules 4001(b) and 4001(c).  No further notice of the relief sought at the Hearing is necessary or required.

F.      *Prepetition Secured Creditors*.  Subject to the provisions of this Final Order, the Debtors admit they have the following prepetition secured obligations (as set forth more fully in the Motion):

i.      *Prepetition Bond Debt:*

a.      Pursuant to that certain Indenture dated as of March 1, 2004 (the "***Original Indenture***") by and between Dutchess County Industrial Development Agency (the "***Issuer***") and the Indenture Trustee, as amended by, among other things, the Second Supplemental Indenture, dated as of June 1, 2007 (the "***Supplemental Indenture***"; and together

with the Original Indenture, the "***Indenture***"), the Issuer authorized and issued those certain: (a) $19,275,000 Civic Facility Revenue Refunding Bonds, Series 2004A (St. Francis Hospital, Poughkeepsie, New York Civic Facility) and $8,760,000 Civic Facility Revenue Bonds, Series 2004B (St. Francis Hospital, Poughkeepsie, New York Civic Facility) (collectively, the "***2004 Bonds***"); and (b) $9,430,000 Civic Facility Revenue Bonds, Series 2007 (St. Francis Hospital, Poughkeepsie, New York Civic Facility) (the "***2007 Bonds***"; and together with the 2004 Bonds, the "***Bonds***").

b.      Proceeds from the sale of the Bonds were used, in part, to finance or refinance a portion of the costs of constructing, renovating, installing, furnishing and equipping certain facilities owned and operated by the Debtors.

c.      In addition, a portion of the initial proceeds of the Bonds was also used to create Debt Service Reserve Funds.  The funds previously held in the Debt Service Reserve Funds, as well as all other accounts held by the Indenture Trustee, are referred to in this Final Order collectively as the "***Bond Funds***".

d.      Pursuant to that certain Hospital Lease, dated as of March 1, 2004, between St. Francis and the Issuer (as amended, the "***Hospital Lease***"), St. Francis leased the Facility (as defined in the Indenture) (including, without limitation, the land described on Exhibit A to the Hospital Lease, and the improvements located on the land and the personal property and equipment made a part of the Facility) to the Issuer.  Pursuant to that certain Lease Agreement dated as of March 1, 2004 between the Borrower and the Issuer and that certain Amendment to Lease Agreement between the Borrower and the Issuer dated as of June 1, 2007 (together, the "***Lease Agreement***"), the Issuer agreed to sublease the Facility to St. Francis in exchange for rental payments in amounts equal to the debt service payments on the Bonds.  In addition, St. Francis and the Foundation executed a certain Guaranty dated March 1, 2004 (the "***Guaranty***")

pursuant to which St. Francis and the Foundation guaranteed the amounts and obligations due under the Bond Documents.

e.    As security for the obligations owing on the Bonds, the Hospital, the Issuer, and the Indenture Trustee entered into that certain (a) Mortgage and Security Agreement (the "*2004 Mortgage*") dated as of March 1, 2004, (b) Mortgage and Security Agreement dated as of June 1, 2007 (the "*2007 Mortgage*"), and (c) Mortgage Consolidation, Modification, Extension and Security Agreement dated as of June 1, 2007 (the "*Mortgage Consolidation*"; and collectively with the 2004 Mortgage and the 2007 Mortgage, the "*Mortgages*")[3] pursuant to which the Hospital and the Issuer granted the Indenture Trustee a first priority mortgage and lien against the real and personal property described therein (the "*Mortgaged Property*").

f.    As further security for the payment of all amounts due under the Bond Documents, the Hospital granted to the Indenture Trustee a first priority lien against all "Gross Receipts" (as defined in the Mortgages), including all accounts, accounts receivable, revenues, and proceeds thereof (such Gross Receipts together with the Mortgaged Property, the "*Prepetition Bond Collateral*").

g.    Pursuant to the Bond Documents, all of the rights, remedies and benefits of the Issuer under the Mortgages, including all of the security interests and rights and remedies granted by the Hospital to the Issuer in the Prepetition Bond Collateral, were assigned to the Indenture Trustee, subject to the retention of certain rights by the Issuer.  The Indenture Trustee has the sole right to exercise the rights and benefits granted to the Issuer under the Bond Documents.

---

[3] The Indenture, Lease Agreement, Guaranty, and Mortgages, together will all other documents related thereto, shall hereinafter be referred to as the "*Bond Documents*".

h.    As of the Petition Date, the amounts due and owing to the Indenture Trustee under the Bond Documents are as follows (collectively, the "**Bond Claim**"):

1)    Unpaid principal on the Bonds in the amount of $31,835,000;

2)    Accrued but unpaid interest on the Bonds as of the Petition Date in the amount of $272,000; and

3)    Unliquidated, accrued and unpaid fees and expenses of the Indenture Trustee and its professionals incurred through the Petition Date, which amounts shall be added to the Bond Claim as liquidated.

ii.    *Prepetition Emergency Advances by the Indenture Trustee:*

a.    Immediately prior to the Petition Date, the Debtors required certain necessary funding to support their operations, and in particular, pay payroll and payroll related expenses (the "**Critical Expenses**").  At the request of the Debtors, the Indenture Trustee advanced certain funds to the Debtors to cover the costs of the Critical Expenses, which advances were in the aggregate amount of $2,300,000 (the "**Emergency Advances**") and were secured by the various assets of the Debtors.

b.    The Debtors acknowledge, admit and agree that, due to the nature of the Emergency Advances, the parties contemplated that all amounts outstanding under the Emergency Advances would be repaid from proceeds of the DIP Financing.

iii.    *Other Putative Secured Creditors*:    The Debtors also have certain prepetition obligations under (a) that certain Mortgage and Security Agreement, dated as of March 1, 2004, given by St. Francis to APP;[4] (b) that certain Term Note, dated as of June 17, 2011, given by SFH Ventures in favor of M&T Bank in the original principal amount of $141,973.39; (c) that

---

[4] Prior to the Petition Date, the liens and claims arising under the Mortgage and Security Agreement with The Archdiocesan Pension Plan were subordinated to the liens and claims arising under the Bond Documents, pursuant to that certain Subordination Agreement given by The Archdiocesan Pension Plan in favor of the Indenture Trustee.

certain Term Note, dated as of June 17, 2011, given by SFH Ventures in favor of M&T Bank in the original principal amount of $258,490.77 ((b) together with (c), the "**M&T Notes**"); and (d) certain putative leases by which parties claim security interests in certain of the Debtors' assets (such secured creditors set forth in (d), the "**Miscellaneous Secured Creditors**").  The prepetition liens and claims of the Indenture Trustee, APP, M&T Bank and the Miscellaneous Secured Creditors are collectively referred to the "**Prepetition Liens**"; and, the real and personal property in which the Indenture Trustee, APP, M&T Bank and the Miscellaneous Secured Creditors hold Prepetition Liens is collectively referred to herein at the "**Prepetition Collateral**".  The prepetition claims and obligations of the Indenture Trustee, APP, M&T Bank and the Miscellaneous Secured Creditors secured by their respective Prepetition Liens in Prepetition Collateral are collectively referred to as the "**Prepetition Obligations**".

G.    *Findings Regarding the DIP Financing and Use of the Cash Collateral*.

i.    *Good Cause*. Good cause has been shown for the entry of this Final Order.

ii.    *Immediate Need*. The Debtors have an immediate and ongoing need to obtain the DIP Financing and for the use of the Cash Collateral (as defined below).  The access of the Debtors to sufficient working capital and liquidity through the incurrence of the DIP Financing and concomitant financial accommodations, along with the use of the Cash Collateral, is vital to the preservation and maintenance of the going concern value of the Debtors.  Absent the DIP Financing and use of the Cash Collateral, the Debtors will not have sufficient sources of working capital to continue as a community based, acute care provider of essential medical services and maintain the value of their assets.  The ability of the Debtors to pay their medical staff and other employees, provide critical patient care, maintain business relationships with vendors and suppliers, purchase new inventory, and otherwise finance their operations is essential to the Debtors' continued viability and the ultimate process of selling the Debtors' assets on a going

concern basis to a stronger financial partner.  Without the DIP Financing and use of the Cash

Collateral, serious and irreparable harm could result not only to the operations, but to the very

persons who depend upon the Debtors' operations including, but not limited to, the Debtors'

underserved patient population.

   iii.  *No Credit Available on More Favorable Terms.*  Given the Debtors' current

financial condition, financing arrangements, capital structure, and other factors described in the

Motion, the Debtors are unable to obtain financing from sources other than the DIP Lender on

terms more favorable than the DIP Financing.  The Debtors have been unable to obtain unsecured

credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code or

solely in exchange for the grant of a special administrative expense priority pursuant to

section 364(c)(1) of the Bankruptcy Code.  The Debtors have also been unable to obtain credit:

(a) having priority over that of administrative expenses of the kind specified in sections 502(b),

507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and

their estates that is not otherwise subject to a lien pursuant to section 364(c)(2) of the Bankruptcy

Code; or (c) secured solely by a junior lien on property of the Debtors and their estates that is

subject to a lien pursuant to section 364(c)(3) of the Bankruptcy Code.  Within the timeframe

required, financing on a postpetition basis is not otherwise available without granting the DIP

Agent: (x) perfected security interest in and liens on (each as provided herein) all of the Debtors'

existing and after-acquired assets with the priorities set forth in Paragraphs 9, 10 and 48 of this

Final Order; (y) superpriority claims with the priorities set forth in Paragraph 11 of this Final

Order; and (z) the other protections, terms and conditions set forth in this Final Order and the DIP

Documents.

   iv.  *Fair and Reasonable Terms*.  The terms of the DIP Financing and the use of

the Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business

judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

v.      *Business Judgment and Good Faith Pursuant to Section 364(e).*  The terms and conditions of the DIP Financing and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Financing was negotiated in good faith and at arms' length among the Debtors and the DIP Agent and DIP Lender.  The credit extended under the DIP Financing shall be deemed to have been so extended in good faith and for valid business purposes and uses within the meaning of section 364(e) of the Bankruptcy Code.  Accordingly, the DIP Agent and DIP Lender are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order will not be affected by any subsequent reversal or modification on appeal of this Final Order or any other order.

vi.      *Priming of Liens and Other Security Interests.*  The priming of the Prepetition Liens to the extent set forth below pursuant to section 364(d) of the Bankruptcy Code is necessary to obtain the DIP Financing.  Without the consent of the Indenture Trustee relating to the priming of its liens and claims and the protections provided in this Final Order, the Debtors would be unable to obtain the proposed DIP Financing from MidCap Financial or MidCap Funding.  In consideration for the priming of the Prepetition Liens set forth below, the Indenture Trustee, APP and Miscellaneous Secured Creditors shall be entitled to receive adequate protection, as set forth in this Final Order, pursuant to sections 361, 363 and 364 of the Bankruptcy Code for any diminution in the value of their respective interests in the Prepetition Collateral resulting from, among other things, the subordination to the Carve Out (as defined below) and to the DIP Liens (as defined below), the Debtors' use, sale or lease of such Prepetition Collateral, and the

imposition of the automatic stay from and after the Petition Date (collectively, and solely to the extent of such diminution in value, the "***Diminution in Value***").

      vii.     *Use of Proceeds of the DIP Financing*.  As a condition to the entry into the DIP Documents and the extension of credit under the DIP Credit Agreement, the DIP Agent requires, and the Debtors have agreed, that the proceeds of the DIP Financing shall be used in a manner consistent with the terms and conditions of the DIP Documents and this Final Order, including any covenant contained in the DIP Documents pertaining to compliance with the Budget as the same may be modified from time to time in accordance with the consents required under the DIP Documents and this Final Order (the "***Budget Compliance Covenant***"), solely for: (a) working capital and other general corporate purposes; (b) repayment of the Emergency Advances in the amount of One Million Three Hundred Thousand Dollars ($1,300,000); (c) payment of the adequate protection amounts set forth in this Final Order; (d) permitted payment of costs of administration of the Cases (subject to the limitations of the Carve Out); and (e) payment of principal, interest, fees and expenses due according to the terms of the DIP Documents.

      viii.     *Application of Proceeds of Collateral.*  As a condition to the entry into the DIP Documents and the extension of credit under the DIP Facility, the Debtors have agreed that as of and commencing on the date of entry of this Final Order, the Debtors shall apply the proceeds of DIP Collateral as set forth in the DIP Documents.

      ix.     *Irreparable Harm*.  The Debtors have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Rule 4001-2.  Absent granting the relief set forth in this Final Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of Cash Collateral in accordance with the provisions of this Final Order and the DIP Documents is therefore in the best interests of the Debtors' estates.

H.    _Findings Regarding the Need for Adequate Protection_.

i.    The Debtors have requested: (i) the use of the Indenture Trustee's Cash Collateral (as defined below); and (ii) the Indenture Trustee's consent to subordinate its liens and proposed adequate protection claims to the DIP Agent and DIP Lender in connection with the proposed DIP Financing.  The Indenture Trustee does not consent to the use of its Cash Collateral or to the subordination of its liens and claims except upon the terms and conditions of this Final Order.

ii.    The Debtors wish to provide adequate protection of the liens and security interests of the Indenture Trustee, as set forth in this Final Order.

iii.    Subject to the rights of third parties pursuant to Paragraph 42 of this Final Order, the Debtors acknowledge and agree that: (i) the Bond Claim and Emergency Advances are valid, binding and allowed claims against the Debtors' estates; (ii) the Bond Claim and Emergency Advances are secured by valid, enforceable, duly perfected, first priority liens on and security interests in the Prepetition Bond Collateral; and (iii) neither the Bond Claim, the Emergency Advances, nor the liens or security interests securing the Bond Claim and Emergency Advances are subject to avoidance or equitable subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

Based upon the foregoing findings and conclusions, the Motion and the record before the Court with respect to the Motion, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED that:**

1.    _DIP Financing Approved_.    The Motion and requests contained in the Motion, including, but not limited to, the DIP Financing, use of Cash Collateral, and granting of adequate protection, are authorized and approved on a final basis, subject to the terms and conditions set forth in this Final Order, the DIP Documents and the Budget.

2.      _Objections Overruled_.  All objections to the entry of this Final Order are hereby overruled to the extent they have not otherwise been resolved or withdrawn.

3.      _Authorization of the DIP Financing and DIP Documents_.  The DIP Documents are hereby approved for the DIP Financing on a final basis**.** Subject to the limitations herein provided, the Debtors are expressly and immediately authorized, empowered and directed to execute and deliver the DIP Documents and to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Documents, and to deliver all instruments and documents which may be required or necessary for performance by the Debtors of their obligations in respect of the DIP Financing and the creation and perfection of the DIP Liens (as defined below) described in and provided for by this Final Order and the DIP Documents.  The Debtors are hereby authorized and directed to pay the principal, interest, fees, expenses and other amounts described in the DIP Documents as such become due and without need to obtain further Court approval, all to the extent provided in the DIP Documents, including, without limitation, origination fees, collateral fees, any unused line fee, appraisal and inspection fees and, whether or not the transactions contemplated hereby are consummated, any pre-closing fees and expenses, closing fees and expenses, audit fees to which the DIP Agent is entitled and the reasonable fees and disbursements of the DIP Agent's attorneys, advisers, accountants, and other consultants. Upon payment, such amounts shall be deemed fully earned, indefeasibly paid, and non-refundable.

4.      _Deposit of Proceeds_.  All collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP Documents. So long as the DIP Credit Agreement remains in effect or there are outstanding DIP Obligations, the Debtors shall cause all proceeds of the DIP Collateral to be remitted to one or more lockboxes and/or other deposit accounts designated by the DIP Documents via electronic funds transfer, but

if any such proceeds are received by the Debtors, the same shall be promptly deposited to a dominion account or concentration account in the name or under the control of the DIP Agent or, solely with respect to any governmental lockbox and/or other deposit accounts under the control of the Debtors with standing instructions to transfer all amounts on deposit therein to the DIP Agent on a daily basis, all as more fully set forth in the DIP Documents. Each of the Debtors' non-restricted deposit accounts, including, without limitation, those to which proceeds of DIP Collateral are deposited, shall be subject to such transfer instructions and other account agreements as are set forth in the DIP Documents or are required by the DIP Agent pursuant thereto, or which are otherwise necessary to effectuate the liens on and security interests in the DIP Collateral granted to DIP Agent in this Final Order. The DIP Agent shall be authorized to apply all such proceeds (subject to final payment or collection in the case of checks or other payment items) to the DIP Obligations in accordance with the DIP Documents. Prior to the remittance to the DIP Agent of any proceeds of the DIP Collateral, the Debtors shall be deemed to hold such proceeds for the benefit of the DIP Agent. Upon execution and delivery, the DIP Documents shall represent valid and binding obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.

5.      *Authorization to Borrow*. Until the earlier of (a) the Termination Date (as defined in Section 1.1 of the DIP Credit Agreement), (b) the termination of obligations under the DIP Documents by the DIP Agent upon the occurrence and during the continuation of an Event of Default (as defined below), (c) the occurrence of a Cash Collateral Termination Event (as defined below), and (d) the date on which the use of Cash Collateral is otherwise terminated (such earlier date, the "**Expiration Date**"), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents and this Final Order, the Debtors are hereby authorized to

request, and DIP Agent shall provide to the Debtors, extensions of credit under the DIP Financing

(in the form of loans) up to the sum of $20,000,000.

6.      *Authorization to Use of Cash Collateral*.

(a)      Until the occurrence of a Cash Collateral Termination Event (as defined

below), the Debtors are authorized to use as cash collateral (as defined in section 363 of the

Bankruptcy Code) the proceeds of the DIP Financing and any revenues from Gross Receipts

(together, the "**Cash Collateral**"), provided, however, that such use of Cash Collateral shall be

limited solely for payment of: (i) principal, interest, fees, and expenses due to the DIP Agent under

this Final Order and the DIP Documents; and (ii) those amounts and categories, and at the times,

set forth in the Budget attached hereto as **Exhibit C**; provided, further, that nothing in this

Paragraph limits or otherwise abrogates the Debtors' obligations set forth in Paragraph 4 of this

Final Order.

(b)      Notwithstanding anything in this Final Order to the contrary, Cash

Collateral shall not include: (i) any cash, securities or funds on deposit with or held by the

Indenture Trustee, such as the Bond Funds; or (ii) proceeds of any lease, sublease, license or sale

(including any sale of the Leased Equipment (as defined below)), outside the ordinary course of

business of any of the Debtors' Assets (together, the "**Extraordinary Proceeds**").  Nothing in this

Final Order or any subsequent order concerning the extension of debtor in possession financing to

the Debtors or the use of cash collateral by the Debtors shall entitle the Debtors to use any portion

of the Bond Funds, and no lien or other interest may be granted in the Bond Funds to any third

party including but not limited to the DIP Lender or any other debtor in possession lender.

7.      *DIP Obligations*.  The DIP Documents and this Final Order shall constitute and

evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations

shall be enforceable against the Debtors, their estates and any successors thereto, including

without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "*Successor Cases*"). Upon entry of this Final Order, the DIP Obligations will include all loans and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Lender under the DIP Documents or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Documents. The DIP Obligations shall be due and payable, without notice or demand, on the Termination Declaration Date (as defined below).

8.      *Payment of Principal, Interest, Fees, Etc.*. The Debtors shall pay to the DIP Agent principal and interest as provided in the DIP Documents and in accordance with the procedures set forth therein. In consideration of the financial accommodations made by the DIP Agent and DIP Lender under this Final Order and the DIP Documents, in accordance with Paragraph 3 of this Final Order, the Debtors are hereby authorized, without further order of this Court and as set forth in the DIP Documents, to: (a) pay to the DIP Agent all reasonable fees and charges, including, but not limited to, origination fees, collateral management fees, and any other administrative or service fees payable under the DIP Documents; and (b) reimburse the DIP Agent and DIP Lender for all reasonable out-of-pocket expenses, professional fees, and other disbursements incurred by them in connection with the preparation of the DIP Documents or other aspects of these Cases. The professional fees and expenses incurred by the DIP Agent and DIP Lender are not subject to the provisions of sections 327, 328, 329, 330, or 331 of the Bankruptcy Code, and shall be paid by the Debtors pursuant to the DIP Documents without further order of the Court, subject to providing a redacted invoice to the Debtors and the Committee and to the extent no objection is raised within ten (10) days of the receipt of such invoice. Professionals for the DIP Agent and

DIP Lender shall not be required to file fee applications or comply with the U.S. Trustee fee guidelines.

9.     *DIP Liens and DIP Collateral*.  Effective immediately upon the entry of this Final Order, but subject to the Closing Date (as defined in the DIP Credit Agreement), the DIP Agent, for the benefit of the DIP Lenders and as security and collateral for the DIP Financing, is hereby granted, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, priming, first-priority, continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected post-petition security interests and liens (collectively, the "***DIP Liens***") senior and super in priority to any security interest or liens of all other secured and unsecured creditors of the Debtors' estates in and on all "Collateral" (as defined in the DIP Credit Agreement), including on all real and personal property and other assets of the Debtors' estates, whether now owned by or owing to, or hereafter acquired by or arising in favor of the Debtors, and whether owned or consigned by or to, or leased from or to, the Debtors, and regardless of where located (collectively, the "***DIP Collateral***"); provided, however, that the DIP Collateral shall not include causes of action of the Debtors or their estates under sections 502(d), 544, 547, 548, 549, 550, 552(b) and 553 of the Bankruptcy Code and state laws of similar import (collectively, "***Avoidance Actions***") or proceeds of Avoidance Actions.

10.     *DIP Lien Priority*.  The DIP Liens securing the DIP Credit Agreement shall be junior in payment and priority only to the (a) Carve Out and (b) M&T's Prepetition Liens on those certain two condominiums owned by SFH Ventures, each of which is located at 41 North Road, Poughkeepsie, New York, solely to the extent such liens secure the M&T Notes.  Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest hereinafter granted in the Cases or any Successor Cases.  The DIP Liens shall be senior to all other rights in the DIP Collateral, including all rights of St. Francis, the Issuer, and Indenture

Trustee under the Hospital Lease and Lease Agreement, as applicable.  The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.  The DIP Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.

11.    *DIP Superpriority Claims*.    The DIP Agent is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "***DIP Superpriority Claims***") for all DIP Obligations.  The DIP Superpriority Claims shall be subordinate in payment and priority only to the Carve Out, and shall (a) otherwise have priority over any and all administrative expenses and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, except as set forth herein, and (b) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative, to the extent permitted by law.  For the avoidance of doubt, the DIP Superpriority Claims shall not extend to any Avoidance Actions or be payable from the proceeds of Avoidance Actions, except that the DIP Superpriority Claims shall extend to any avoidance actions or claims arising under section 549 of the Bankruptcy Code and the proceeds thereof.

12.    *Adequate Protection*.

(a)    Adequate Protection Provided to the Indenture Trustee.    The Indenture Trustee is entitled to receive adequate protection on account of its interests in the Prepetition Bond Collateral pursuant to sections 361, 362, and 364 of the Bankruptcy Code.

i.    *Paydown of Emergency Advances*.  Upon entry of this Final Order, the Debtors are authorized to use proceeds of the funding under the DIP Financing to repay One Million Three Hundred Thousand Dollars ($1,300,000) of the Emergency Advances.  Upon such payment, such portion of the Emergency Advances shall be deemed indefeasibly paid in full and not subject to any claim or cause of action of any type or nature.

ii.    *Adequate Protection Payments*.  In consideration for the use of the Cash Collateral, and in consideration of the Indenture Trustee's consent to subordination of its liens pursuant to this Final Order, the Debtors shall make adequate protection payments in an amount equal to the regularly scheduled, non-default amounts due to be paid by the Debtors under the Bond Documents, including, without limitation, any amounts due for the payment of fees and expenses of the Indenture Trustee and its professionals (the "***Adequate Protection Payments***"). The fees and expenses incurred by the Indenture Trustee, including the Indenture Trustee's own fees and expenses and those of it professionals, shall not be subject to the provisions of sections 327, 328, 329, 330 or 331 of the Bankruptcy Code and shall be paid by the Debtors without further order of the Court within five (5) business days of delivery to the Debtors and the Committee of any invoices therefor if the Debtors or the Committee do not object to the payment of such invoices within five (5) business days of receipt of the invoices.  The invoices may be redacted with respect to privileged matters.  The amounts payable by the Debtors for such fees and expenses incurred by the Indenture Trustee in any one month shall not exceed $75,000; provided that any unused amount in any month may be rolled over to any subsequent month to increase

such cap; and provided further that nothing herein shall prevent the Indenture Trustee from asserting all rights it has to recover such fees and expenses under the Bond Documents.  In the event the Indenture Trustee is not entitled to receive post-petition interest and/or expenses based upon the application of section 506(b) of the Bankruptcy Code, any such adequate protection payments shall be first applied to the secured portion of the Bond Claim until such portion of the Bond Claim is paid in full with any balance paid to the Debtors.

iii.    *Rollover Lien*.    As additional adequate protection, and in consideration for (A) the use of the Cash Collateral by the Debtors and (B) the Indenture Trustee's consent to subordination of its liens and claims pursuant to this Final Order, on and after the Petition Date, the Indenture Trustee is hereby granted a valid, perfected and enforceable continuing replacement lien and security interest (the "***Rollover Lien***") in all assets of the Debtors existing on or after the Petition Date of the same type as the collateral securing the Bond Claim and Emergency Advances, together with the proceeds, rents, products and profits thereof, whether acquired or arising before or after the Petition Date, to the same extent, validity, perfection, enforceability and priority of the liens and security interests of the Indenture Trustee in such collateral as of the Petition Date, solely to the extent of any Diminution in Value of the Indenture Trustee's prepetition interest in the collateral securing the Bond Claim and the Emergency Advances as determined by the Court.  The Rollover Lien shall be subject only to: (X) prior valid and perfected liens existing as of the Petition Date; (Y) the liens and claims granted to the DIP Agent and DIP Lender pursuant to this Final Order; and (Z) the Carve Out.  For avoidance of doubt, the Rollover Lien shall not attach to Avoidance Actions or proceeds of Avoidance Actions.

iv.    *Supplemental Lien*.    As additional adequate protection, and in consideration for (A) the use of the Cash Collateral by the Debtors and (B) the Indenture Trustee's consent to subordination of its liens and claims pursuant to this Final Order, the Indenture Trustee

is hereby granted a valid, perfected and enforceable continuing supplemental lien and security interest (the "**Supplemental Lien**") in all of the assets of the Debtors of any kind or nature whatsoever within the meaning of section 541 of the Bankruptcy Code, whether acquired or arising prepetition or postpetition, including all causes of action except as otherwise set forth in this Paragraph, together with all proceeds, rents, products, and profits thereof, solely to the extent of any Diminution in Value of the Indenture Trustee's prepetition interest in the collateral securing the Bond Claim and the Emergency Advances as determined by the Court; provided, however, any Supplemental Lien shall not attach to or include Avoidance Actions or proceeds of Avoidance Actions.  The Supplemental Lien shall be subject only to: (X) prior valid and perfected liens existing as of the Petition Date; (Y) the liens and claims granted to the DIP Agent and DIP Lender pursuant to this Final Order; and (Z) the Carve Out.

v.      *Treatment of the Rollover Lien and Supplemental Lien*.  Each of the Rollover Lien and Supplemental Lien shall be deemed a Permitted Lien as defined in the DIP Credit Agreement.  Each of the Rollover Lien and Supplemental Lien shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases.   Neither the Rollover Lien nor Supplemental Lien shall be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.

vi.      *Additional Liens*.  The assets subject to the Rollover Lien and the Supplemental Lien (together, the "**Post-Petition Bond Collateral**") shall be in addition to all other rights of the Indenture Trustee, including its liens and security interests in the Prepetition Bond Collateral.  The Rollover Lien and the Supplemental Lien shall not be: (A) subject or subordinate to, with the exception of the liens and claims granted to the DIP Agent under this Final Order, any liens

arising after the Petition Date including, without limitation, any liens or security interests in favor of any federal, state, municipal or other government unit, commission, board or court for any tax liability of the Debtors, whether secured or unsecured, including property taxes for which liability is *in rem*, *in personam*, or both, except a tax of a kind specified in section 507(a)(8) of the Bankruptcy Code, or (3) any intercompany or affiliate liens of the Debtors; or (B) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise, with the exception of the liens and claims granted to the DIP Agent under this Final Order.

vii.       *Indenture Trustee Superpriority Claims.*  As additional adequate protection and in consideration for (A) the use of the Cash Collateral by the Debtors and (B) the Indenture Trustee's consent to subordination of its liens and claims pursuant to this Final Order, solely to the extent that the Rollover Lien and Supplemental Lien fail to protect the Indenture Trustee against any Diminution in Value of the collateral securing the Bond Claim and the Emergency Advances as determined by the Court, the Indenture Trustee shall have an allowed super-priority administrative expense claim pursuant to section 503(b) and 507(b) of the Bankruptcy Code in the Cases or any Successor Cases (the "***Indenture Trustee Superpriority Claim***"), including all causes of action (inclusive of Avoidance Actions and proceeds thereof); provided, however, the Indenture Trustee Superpriority Claim may only be paid from Avoidance Actions and the proceeds thereof in an amount not to exceed the unpaid balance owed with respect to the Emergency Advances solely to the extent that the Rollover Lien, Supplemental Lien and Indenture Trustee Superpriority Claim fail to protect the Indenture Trustee against any Diminution in Value of the Indenture Trustee's prepetition interest in the collateral securing the Emergency Advances as determined by the Court. The Indenture Trustee Superpriority Claim shall have priority over any and all administrative expenses, diminution claims and all other claims against the Debtors, including any Secured Party

Superpriority Claims, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all other administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 546, 726, 1113 or 1114 of the Bankruptcy Code, and shall at all times be senior to the rights of Debtors, any successor trustee or any creditor, in these Cases or any Successor Cases, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of Debtors and all proceeds thereof; provided, however, the Indenture Trustee Superpriority Claim shall be subordinate only to the: (1) DIP Superpriority Claims; and (2) Carve Out.

viii.        *Compliance With Bond Documents*.    As additional adequate protection and in consideration for (A) the use of Cash Collateral by the Debtors and (B) the Indenture Trustee's consent to the subordination of its liens and claims pursuant to this Final Order, the Debtors shall comply with all terms and provisions of the Bond Documents set forth on **Schedule 1** attached hereto and incorporated herein by reference.  The requirements of this Final Order shall be in addition to, and not in substitution for, the terms and provisions of the Bond Documents set forth on **Schedule 1**; provided, however, in the event of any inconsistency between the Bond Documents and this Final Order, the terms of this Final Order shall control.

ix.        *Financial Information*.    As additional adequate protection of the Indenture Trustee's security interests in the Cash Collateral, and in consideration of the Indenture Trustee's consent to the subordination of its liens pursuant to this Final Order, the Debtors shall allow the Indenture Trustee reasonable access during normal business hours to the premises, officers, employees, auditors, appraisers and financial advisors of the Debtors in order to conduct

appraisals, analyses and/or audits of the Prepetition Bond Collateral and the Post-Petition Bond Collateral, and shall otherwise reasonably cooperate in providing any other financial information requested by the Indenture Trustee. After the closing of the DIP Revolving Loan, the Debtors shall provide to the Indenture Trustee all Borrowing Base Certificates (as defined in the DIP Credit Agreement) and all similar documents submitted to the DIP Agent or DIP Lender and a copy of each monthly operating report as and when submitted to the Office of the United States Trustee. The Debtors shall furnish such other reports and information as may be reasonably requested from time to time by the Indenture Trustee, all such reports to be certified by the Debtors' chief financial officer or chief executive officer. From and after the entry of this Final Order, the Debtors shall provide to the Indenture Trustee and DIP Agent on Wednesday of each week (commencing with the second week after the Petition Date), a weekly report certified by the Debtors' chief financial officer and in the same form as the Budget indicating all receipts received and disbursements made by the Debtors in the week ending the prior Friday compared to the Budget and detailing any variances of more than 5% and at least $10,000 from the expenditures and receipts in the Budget. The Debtors and their professionals and consultants shall be available weekly (subject to reasonable scheduling conflicts) for a telephonic conference call with the DIP Agent and Indenture Trustee and/or their professionals and holders of the Bonds to discuss the status of the Cases and the results of operations and other matters pertaining to the Cases. The DIP Agent and Indenture Trustee shall have independent access to the Debtors' financial advisor and investment banker to discuss matters relating to the Cases.

x.    *Bankruptcy Proceeding Milestones*. As further adequate protection, and in consideration for (A) the use of the Cash Collateral by the Debtors and (B) the Indenture Trustee's consent to the subordination of its liens and claims pursuant to this Final Order, and subject to the scheduling by the Court, the Debtors shall comply with the following milestones,

subject to any extensions being granted by the Indenture Trustee in its sole discretion (the "**Milestones**"):

> (1)     On or before February 4, 2014, the Debtors shall have filed a proposed plan of reorganization or liquidation (the "**Plan**") and accompanying disclosure statement (the "**Disclosure Statement**") in form and substance reasonably acceptable to the Indenture Trustee;

> (2)     If applicable, on or before February 13, 2014, the Debtors shall have conducted an auction for the sale of substantially all of their assets as set forth in that certain motion dated December 17, 2013 (Dkt. No. 18) (the "**Sale Motion**");

> (3)     On or before February 18, 2014, the Debtors shall have obtained an order from the Court approving the sale of assets pursuant to the Sale Motion, in form and substance reasonably acceptable to the Indenture Trustee;

> (4)     On or before March 3, 2014, the Debtors shall have obtained an order from the Court approving the Disclosure Statement in form and substance reasonably acceptable to the Indenture Trustee;

> (5)     On or before April 4, 2014, the Debtors shall have obtained an order from the Court confirming the Plan in form and substance reasonably acceptable to the Indenture Trustee;[5] and

> (6)     On or before April 18, 2014, the Debtors shall have consummated the Plan and the Plan shall otherwise have become effective.

> xi.     *Failure of Adequate Protection*.  Nothing herein shall constitute a waiver, release or modification of the rights of the Indenture Trustee to assert a claim under sections 364(c) and 507(b) on a basis subordinate to the DIP Superpriority Claims.

> (b)     <u>Adequate Protection Provided to APP</u>.  APP is entitled to receive adequate protection on account of its respective interests in the Prepetition Collateral pursuant to

---

[5] Any order relating to the sale of the assets of the Debtors or confirmation of any Plan shall be in form and substance satisfactory to the DIP Agent as set forth in the DIP Credit Agreement.

sections 361, 362, and 364 of the Bankruptcy Code to the extent of any Diminution in Value of its interests in its Prepetition Collateral.

      i.    *Replacement Liens*. Pursuant to sections 361, 364 and 507(b), but only to the extent that (A) the respective Prepetition Obligations remain outstanding, (B) APP holds valid and perfected Prepetition Liens in the Prepetition Collateral, and (C) there is any Diminution in Value of APP's interests in the Prepetition Collateral as determined by the Court, APP will hereby receive as adequate protection automatically perfected, replacement liens on the DIP Collateral to the same extent and priority of APP's Prepetition Liens (the "***APP Replacement Liens***") and against each Debtor in which APP holds a Prepetition Lien (an "***Applicable Debtor***"). The APP Replacement Liens shall be deemed a Permitted Lien within the meaning of the DIP Credit Agreement. The APP Replacement Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The APP Replacement Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. For the avoidance of doubt, the APP Replacement Liens shall not attach to Avoidance Actions or proceeds of Avoidance Actions.

      ii.    *APP Superpriority Claims*. Junior only to the DIP Superpriority Claims, Indenture Trustee Superpriority Claim, and the Carve Out, and only to the extent the APP Replacement Liens fail to protect APP against any Diminution in Value of APP's interest in the Prepetition Collateral, APP shall, upon such demonstration that the APP Replacement Liens fail to protect APP against any Diminution in Value in APP's interest in the Prepetition Collateral, be entitled, pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, to an allowed superpriority administrative expense claim in each of the Cases of the Applicable Debtors and any

Successor Cases of the Applicable Debtors (collectively, the "***APP Superpriority Claims***") to the extent the APP Replacement Liens fail to protect APP against Diminution in Value in APP's interest in the Prepetition Collateral.   The APP Superpriority Claims, if permitted, shall be subordinate in payment and priority only to the DIP Superpriority Claims, Indenture Trustee Superpriority Claim, and the Carve Out, and shall (A) otherwise have priority over any and all administrative expenses and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code, and any other provision of the Bankruptcy Code, except as set forth herein, and (B) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative, to the extent permitted by law.   The APP Superpriority Claims, if permitted, shall not extend to or be payable from (1) commercial tort claims or (2) Avoidance Actions, or any of the proceeds of (1) and (2), except that the APP Superpriority Claims shall extend to any avoidance actions or claims arising under section 549 of the Bankruptcy Code and the proceeds thereof.

(c)      _Adequate Protection Provided to Miscellaneous Secured Creditors_.   The Miscellaneous Secured Creditors are entitled to receive adequate protection on account of their respective interests in the Prepetition Collateral pursuant to sections 361, 362, and 364 of the Bankruptcy Code to the extent of any Diminution in Value of their respective interests in their respective Prepetition Collateral.

i.      *Replacement Liens*.   Each of the Miscellaneous Secured Creditors is entitled to receive adequate protection on account of its respective interests in the Prepetition

Collateral pursuant to sections 361, 362 and 364 of the Bankruptcy Code to the extent of any

Diminution in Value of its respective interests in the Prepetition Collateral.    Pursuant to

sections 361, 364 and 507(b), but only to the extent that (A) the respective Prepetition Obligations

remain outstanding, (B) a Miscellaneous Secured Creditor holds  valid and perfected Prepetition

Liens in the Prepetition Collateral, and (C) there is any Diminution in Value of a Miscellaneous

Secured Creditor's interests in the Prepetition Collateral as determined by the Court, such

Miscellaneous Secured Creditor will hereby receive as adequate protection automatically

perfected, replacement liens on the DIP Collateral to the same extent and priority of such

Miscellaneous Secured Creditor's Prepetition Liens (the "***Miscellaneous Secured Creditor***

***Replacement Liens***"; and together with the APP Replacement Liens, Rollover Lien and

Supplemental Lien, the "***Adequate Protection Liens***") and against each Applicable Debtor.  Each

Miscellaneous Secured Creditor Replacement Lien shall be deemed a Permitted Lien within the

meaning of the DIP Credit Agreement.  The Miscellaneous Secured Creditor Replacement Liens

shall be valid and enforceable against any trustee or other estate representative appointed in the

Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7

of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the

Cases or Successor Cases.  The Miscellaneous Secured Creditor Replacement Liens shall not be

subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code.  For the avoidance of doubt,

the Miscellaneous Secured Creditor Replacement Liens shall not attach to Avoidance Actions or

proceeds of Avoidance Actions.

       ii.    *Miscellaneous Secured Creditors Superpriority Claims*.  Junior only

to the DIP Superpriority Claims, Indenture Trustee Superpriority Claim, and the Carve Out, and

only to the extent the Miscellaneous Secured Creditor Replacement Liens fail to protect a

Miscellaneous Secured Creditor against any Diminution in Value of such Miscellaneous Secured

Creditor's interest in the Prepetition Collateral, such Miscellaneous Secured Creditor shall, upon

such demonstration that the Miscellaneous Secured Creditor Replacement Liens fail to protect the

Miscellaneous Secured Creditor against any Diminution in Value in such Miscellaneous Secured

Creditor's interest in the Prepetition Collateral, be entitled, pursuant to sections 503(b) and 507(b)

of the Bankruptcy Code, to an allowed superpriority administrative expense claim in each of the

Cases of the Applicable Debtors and any Successor Cases of the Applicable Debtors (collectively,

the "*Miscellaneous Secured Creditor Superpriority Claims*") to the extent the Miscellaneous

Secured Creditor Replacement Liens fail to protect such Miscellaneous Secured Creditor against

Diminution in Value in such Miscellaneous Secured Creditor's interest in the Prepetition

Collateral.  The Miscellaneous Secured Creditor Superpriority Claims, if permitted, shall be

subordinate in payment and priority only to the DIP Superpriority Claims, Indenture Trustee

Superpriority Claim, and the Carve Out, and shall (A) otherwise have priority over any and all

administrative expenses and unsecured claims against the Debtors or their estates in any of the

Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever,

including, without limitation, administrative expenses of the kinds specified in or ordered pursuant

to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b) (except as set forth

herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy

Code, and any other provision of the Bankruptcy Code, except as set forth herein, and (B) at all

times be senior to the rights of the Debtors and their estates, and any successor trustee or other

estate representative, to the extent permitted by law.  The Miscellaneous Secured Creditor

Superpriority Claims, if permitted, shall not extend to or be payable from (1) commercial tort

claims or (2) Avoidance Actions, or any of the proceeds of (1) and (2), except that the

Miscellaneous Secured Creditor Superpriority Claims shall extend to any avoidance actions or

claims arising under section 549 of the Bankruptcy Code and the proceeds thereof.

13.    *No Obligation to Extend Credit*.  Subject to Paragraph 30(b) of this Final Order, the DIP Lender shall not have any obligation to make any loan or advance under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit under the applicable DIP Documents and this Final Order have been satisfied in full or waived by the DIP Lender in its sole discretion.

14.    *Use of DIP Financing Proceeds*.  The Debtors shall use advances of DIP Financing credit only for the purposes specifically set forth in this Final Order, the DIP Documents and in compliance with the Budget Compliance Covenant.  Any further orders of the Court authorizing the Debtors to use funds shall be made in accordance with the Budget and in compliance with the terms of this Final Order.

15.    *Amendment of the DIP Documents*. The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if: (a) the amendment, modification, or supplement is (i) in accordance with the DIP Documents, (ii) beneficial to the Debtors, and (iii) does not increase the amount of the DIP Term Loan or the "Applicable Margin" or the "Revolving Loan Commitment" or extend the "Termination Date" (each as defined in the DIP Credit Agreement); (b) the amendment, modification or supplement is filed with the Court; and (c) a copy (which may be provided through electronic mail or facsimile) of the substantially final amendment, modification or supplement is provided to counsel for each of the Indenture Trustee, APP, the Committee and the U.S. Trustee at least three (3) days (or such shorter period agreed to by the Indenture Trustee, APP, the Committee and the U.S. Trustee) prior to the effective date of such amendment, modification or supplement and there is no objection by such parties within such three (3) day period.  Except as otherwise provided in this Paragraph, no waiver, modification, or amendment of any of the provisions of any DIP Document shall be effective unless set forth in writing, signed on behalf of the Debtors and with the necessary

consents required under and executed in accordance with the DIP Documents, and approved by the Court on notice.

16.      _Budget Maintenance_.  The Budget shall be in form and substance acceptable to and approved by the DIP Agent and Indenture Trustee in each of their sole discretion.  The Debtors shall update the Budget as provided in the DIP Documents (provided that any update shall be in form and substance acceptable to the DIP Agent and Indenture Trustee in each of their sole discretion), with delivery to the DIP Agent in accordance with the DIP Documents, with copies to be provided to counsel to the Committee, the Indenture Trustee, APP, and the U.S. Trustee at least three (3) business days prior to the effective date of the updated Budget. The Budget may be amended or modified in writing from time to time only with: (a) the written consents required under the DIP Documents; and (b) the written consent of the Indenture Trustee.  The Committee will be provided with three (3) business days' prior notice of any amended or modified Budget.  If the Committee raises an objection to any amended or modified Budget within three (3) business days after receipt thereof, and such objection cannot be resolved consensually, the contested portion of the amended or modified Budget shall not be effectuated until approved by the Court by further order of the Court.  The Committee may object to any updated Budget within three (3) business days of its counsel's receipt thereof and if such objection cannot be resolved consensually, the contested portion of the updated Budget shall not be effectuated until approved by the Court by further order of the Court.  The Debtors may exceed the Budget Compliance Covenant with the consent of the DIP Agent and Indenture Trustee in each of their sole discretion.

17.      _Deemed Request for Stay Relief_.  This Final Order shall be deemed to constitute a request by the Indenture Trustee for relief from the automatic stay with respect to the Prepetition Bond Collateral and for adequate protection for the use of the Cash Collateral as of the Petition Date.

34

18.     _Modification of Automatic Stay_.  The automatic stay imposed under section 362(a)

of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and

provisions of this Final Order, including, without limitation, to: (a) permit the Debtors to grant the

DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, Indenture Trustee Superpriority

Claim, and, if permitted, APP Superpriority Claims; (b) permit the Debtors to incur all liabilities

and obligations under the DIP Documents, the DIP Financing and this Final Order; (c) permit the

Debtors to perform such other acts as are necessary to effectuate the terms of this Final Order; (d)

authorize the Debtors to pay, and the DIP Agent to retain and apply, payments made in accordance

with the terms of this Final Order; (e) the receipt of payments to be made by the Debtors to the

Indenture Trustee and the payment of amounts due to the holders of the Bonds; (f) the application,

allocation or payment from any of the funds or accounts maintained by the Indenture Trustee in

accordance with the terms of the Bond Documents including, but not limited to, the Bond Funds;

(g) the payment of all fees and expenses of the Indenture Trustee and its professionals by the

Debtors; and (h) the exercise of remedies by the DIP Agent, DIP Lender, or Indenture Trustee to

the extent permitted by this Final Order.

19.     _Perfection of DIP Liens and Adequate Protection Liens_.  This Final Order shall be

sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and

Adequate Protection Liens without the necessity of filing or recording any financing statement,

mortgage, notice of lien or other instrument or document which may otherwise be required under

the law or regulation of any jurisdiction or the taking of any other action (including, for the

avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in

accordance with applicable nonbankruptcy law) the DIP Liens and Adequate Protection Liens, or

to entitle the DIP Agent, the Indenture Trustee and APP to the priorities granted herein.

Notwithstanding the foregoing, each of the DIP Agent, Indenture Trustee and APP is authorized to

file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable nonbankruptcy law or to otherwise evidence the applicable DIP Liens or Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens or the Adequate Protection Liens. The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent, Indenture Trustee and APP all such financing statements, mortgages, notices and other documents as any of the DIP Agent, Indenture Trustee or APP may reasonably request. The DIP Agent, Indenture Trustee or APP, each in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument. No obligation, payment, transfer or grant of security under this Final Order shall be stayed, restrained, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act (or similar statue or common law) or subject to any defense reduction, setoff, recoupment or counterclaim.

20.    *Proceeds of Subsequent Financing*. If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases, other than a receiver appointed pursuant to New York law, shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Documents at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Lender's obligation to extend credit under the DIP Financing, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in the DIP Documents and this Final Order, and

then to the Indenture Trustee and APP, as applicable, to be applied against their respective claims. Any surplus shall be held by the Debtors subject to further order of the Court.

21.      *Maintenance of DIP Collateral*.   Until the payment in full in cash of all DIP Obligations, and the termination of the DIP Documents and the DIP Lender's obligations to extend credit under the DIP Revolving Loan and DIP Term Loan, the Debtors shall:  (a) insure the DIP Collateral as required pursuant to the terms of the DIP Credit Agreement; and (b) maintain the cash management system which has first been agreed to by the required consents under the DIP Documents, or as otherwise required by the DIP Documents.

22.      *Disposition of DIP Collateral; Rights of DIP Agent*.   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than as permitted in the DIP Documents and this Final Order without the prior written consents as required under the DIP Documents, and no such consent shall be implied from any other action, inaction or acquiescence by the DIP Agent, Indenture Trustee or APP, or an order of this Court, it being understood that the DIP Agent consents to any proposed sale of substantially all of the DIP Collateral to the extent at the time of the consummation of such sale the DIP Obligations shall be paid in full.

23.      *DIP Termination*.   On the Expiration Date, all DIP Obligations shall be immediately due and payable, and all commitments to extend credit with respect to the DIP Financing will terminate.

24.      *Events of Default*.   The occurrence of (a) a Cash Collateral Termination Event or (b) an "Event of Default" under the DIP Credit Agreement (subject to any extensions or waivers as permitted under the DIP Documents) shall constitute an event of default under the DIP Documents and this Final Order, unless expressly waived in writing by the DIP Agent in accordance with the consents required in the DIP Documents (collectively, the "***Events of Default***").

25.    _Rights and Remedies Upon Event of Default_.  Immediately upon the occurrence and during the continuation of an Event of Default, the DIP Agent, as provided in the DIP Documents, may declare: (a) all DIP Obligations owing under the DIP Documents to be immediately due and payable; (b) the termination, reduction or restriction of any further commitment to extend credit to the Debtors to the extent any such commitment remains; and/or (c) the termination of the DIP Credit Agreement and any other DIP Document as to any future obligation of the DIP Agent or DIP Lender, but without affecting any of the DIP Liens or the DIP Obligations (any such declaration by the DIP Agent shall be referred to herein as a "**_Termination Declaration_**").  The Termination Declaration shall be given by email (or other electronic means) to counsel to the Debtors, counsel to the Indenture Trustee, counsel to APP, counsel to the Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "**_Termination Declaration Date_**").  The DIP Obligations shall be due and payable, without notice or demand, on the Termination Declaration Date.  Any automatic stay otherwise applicable to the DIP Agent is hereby modified so that beginning on the seventh (7th) day after the Termination Declaration Date (such seven day period being the "**_Remedies Notice Period_**"), the DIP Agent shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Documents and this Final Order, and shall be permitted to satisfy the DIP Obligations and DIP Superpriority Claims, subject to the Carve Out.  Notwithstanding the foregoing, and without order of or application or motion to the Court, if an Event of Default exists, the DIP Agent may do any one or more of the following at any time, including during the Remedies Notice Period, and in any order: (u) reduce the amount of the Revolving Loan Commitment or the Borrowing Base under the DIP Documents; (x) restrict the amount of or refuse to make loans under the DIP Documents; (y) terminate the DIP Lender's commitment to lend under the DIP Documents; or (z) declare the DIP Financing to be immediately due and payable.

The DIP Agent's failure to exercise any or all of its rights under this Paragraph shall not constitute a waiver of any of its rights hereunder or under the DIP Documents.

26.    *Termination of Use of Cash Collateral*.

(a)    The Debtors' authority to use Cash Collateral pursuant to the terms of this Final Order will terminate without any further action by the Bankruptcy Court seven (7) days after written notification sent by the Indenture Trustee to the Debtors, the DIP Lender, the Committee, and the U.S. Trustee of the occurrence of any of the following (each a "***Cash Collateral Termination Event***"):

(i)    the incurrence by the Debtors of administrative expenses or any other amounts, of a type not set forth in the Budget;

(ii)    payment of claims or amounts or at the times not set forth in the Budget;

(iii)    the failure of the Debtors to timely pay all fees due under 28 U.S.C. § 1930;

(iv)    any of the Cases are dismissed or converted to a proceeding under chapter 7 of the Bankruptcy Code;

(v)    the earlier of (y) the date of the entry of an order of this Court appointing a chapter 11 trustee or an examiner with enlarged powers (beyond those set forth in sections 1104(c) and 1106(a)(3) and (4) of the Bankruptcy Code); or (z) the date the Debtors file a motion, application or other pleading consenting to or acquiescing in any such appointment;

(vi)    the closing of a sale of all or substantially all of the Debtors' assets;

(vii)    the Bankruptcy Court suspends the Cases under section 305 of the Bankruptcy Code;

(viii)    the Debtors default or are in further breach of any term of the Bond Documents as set forth on **Schedule 1**;

(ix)    the Debtors fail to comply with, keep, observe or perform any of their agreements or undertakings under this Final Order including, but not limited to, the Milestones;

(x)     entry of an order confirming a plan in the Cases;

(xi)    this Final Order becomes stayed, reversed, vacated, amended, suspended or otherwise modified in any respect without the prior written consent of the Indenture Trustee;

(xii)   an adversary proceeding or contested matter is commenced by the Debtors challenging the validity, extent, enforceability, priority or extent of the Indenture Trustee's liens or claims;

(xiii)  imposition of orders, penalties or fines by any governmental agency or unit which does or could, if not cured promptly, result in the cessation of operations of the Debtors; or

(xiv)   any Event of Default under this Final Order or any agreement related thereto.

(b)     *Right to Use Cash Collateral Notwithstanding a Termination Event.* Notwithstanding the expiration of the seven (7) day period referenced above in Paragraph 26(a) and the failure of the Debtors to cure any Event of Default that is curable or the Bankruptcy Court to order otherwise, the Debtors may continue to use the Cash Collateral solely for the purposes of paying amounts due and owing under the Carve Out and the DIP Loan, provided that the Debtors shall cease using Cash Collateral immediately upon payment of all such amounts.  In addition, upon the expiration of such seven (7) day period, the automatic stay shall be lifted with respect to the Post-Petition Bond Collateral and the Prepetition Bond Collateral for the benefit of the Indenture Trustee to allow the Indenture Trustee to exercise all of its available rights and remedies against the Prepetition Bond Collateral and Post-Petition Bond Collateral under the Bond Documents and applicable law; provided, however, in exercising such remedies, the Indenture Trustee shall not restrict access of the DIP Agent or DIP Lender to the DIP Collateral; provided, further, that nothing contained in this Paragraph shall be deemed to restrict the rights of the DIP Agent to exercise its rights against the DIP Collateral; and provided, further, the Debtors or Committee may seek an order from the Court prior to the expiration of such seven (7) day-period

to re-impose the automatic stay.    For the avoidance of doubt, in the event the Debtors' authority to use Cash Collateral pursuant to the terms of this Final Order is terminated, the Debtors shall have the right to seek authority from the Court to (i) use Cash Collateral on a non-consensual basis and (ii) receive continued advances under the DIP Credit Agreement, in the event the DIP Agent, despite being under no obligation to do so, will agree to fund such advances, subject to the rights of all parties to contest same.

27.    *Indemnification of the DIP Agent*.    The Debtors shall defend, indemnify and hold harmless DIP Agent and each of its Affiliates (as defined in the DIP Credit Agreement) and their respective successors and assigns, and the directors, officers, partners, members, shareholders, participants, employees, professionals and agents of any of the foregoing and each other Person (as defined in the DIP Credit Agreement), if any, who controls the DIP Agent, its Affiliates or any of the foregoing (the "***Indemnified Parties***"), to the extent and as set forth in the DIP Documents. Nothing herein shall limit the DIP Agent's exercise of its discretionary rights granted under the DIP Documents, including an Indemnified Party's right to select its own counsel with respect to any litigation, or preparation therefor, related to the enforcement of this Final Order or its rights and remedies under the DIP Documents, which counsel's reasonable fees and expenses shall be promptly paid by the Debtors within five (5) days after providing an invoice of such costs and expenses to the Debtors, Committee, and U.S. Trustee and there is no objection to such amounts within such five (5) day period.

28.    *Reporting Requirements*.    The Debtors shall observe and comply with all of the financial reporting and performance covenants and conditions set forth in the DIP Documents.

29.    *Rights of Access and Information*.    Without limiting the rights of access and information afforded the DIP Agent under the DIP Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent reasonable

access to the Debtors' premises and their books and records in accordance with the DIP Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent all such information as may be reasonably requested, with respect to the business, results of operations and financial condition of any Debtor. Notwithstanding anything to the contrary, any and all of the Debtors' obligations under this Paragraph shall be subject to the Debtors' and their advisors' fiduciary duties under the Bankruptcy Code, applicable privileges and reasonable and customary confidentiality agreements not entered into for purposes of protecting information pursuant to this Paragraph.

      30.    *Carve Out*.

      (a)    *Carve Out*.  As used in this Final Order, the "***Carve Out***" shall encompass the following expenses, following the occurrence of a Triggering Event (as defined below): (i)(A) allowed fees and reimbursements for disbursements of professionals retained by the Debtors (the "***Debtors' Professional Fee Payments***") in an aggregate amount for all the Debtors' Professional Fee Payments not to exceed $150,000 incurred after the Triggering Event; (B) allowed fees and reimbursements for disbursements of professionals retained by the Committee (the "***Committee's Professional Fee Payments***") in an aggregate amount for all of the Committee's Professional Fee Payments not to exceed $50,000 incurred after the Triggering Event; (C) allowed fees and reimbursements for disbursements of any patient care ombudsman ("PCO") appointed in these Cases and any professionals retained by the PCO (the "PCO Fee Payments") in an aggregate amount not to exceed $20,000 incurred after the Triggering Event; (D) quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) and any fees payable to the clerk of the Bankruptcy Court; and (E) fees payable to a chapter 7 trustee in an aggregate amount not to

exceed $15,000 (collectively, (A), (B), (C), (D) and (E), the "*Carve Out Amount*"); and (ii) all of the Debtors' Professional Fee Payments and Committee's Professional Fee Payments allowed, or subsequently allowed, and payable under sections 330 and 331 of the Bankruptcy Code, to the extent incurred prior to such Triggering Event (the "*Pipeline Period*") and not otherwise previously paid subject to the amounts set forth in the Budget. The DIP Agent shall be and hereby is authorized on a monthly basis to accrue and hold in escrow in an interest bearing deposit account (the "*Professional Fee Account*") the amount contained in the Budget relating to the Debtors' Professional Fee Payments and Committee's Professional Fee Payments, which amount is earmarked for, and shall be applied toward, the payment, upon proper application to, and allowance by, the Court, of such professionals' fees, including as provided in any order entered by this Court with respect to the procedures for seeking compensation and reimbursement for expenses (an "*Administrative Fee Order*"). As used in this Paragraph, the term "*Triggering Event*" shall mean the earlier to occur of: (a) the date the DIP Agent or Indenture Trustee provides to the Debtors, the Committee, and the Indenture Trustee or DIP Agent (as applicable), with a copy to Debtors' counsel at the address set forth in the DIP Documents and to counsel for the Committee, a notice of (i) an Event of Default or Cash Collateral Termination Event and (ii) termination of the Pipeline Period for purposes of the Carve Out; or (b) the date upon which a failure of the Debtors to notify the DIP Agent of the occurrence of a Default (as defined in the DIP Documents) or Event of Default (of which the DIP Agent is not otherwise aware of on such date) constitutes a failure to comply with the requirement to give such a notice under the DIP Documents.

(b)     *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees*. With the exception that the DIP Agent must make available funds previously swept from the Debtors' bank accounts or resulting from the sale or other disposition of the DIP

Collateral in order that the Debtors' Professional Fee Payments and Committee's Professional Fee Payments can be satisfied up to the Carve Out Amount (to the extent there are not sufficient funds in the Professional Fee Account or otherwise available) as provided for by the terms of this Final Order, the DIP Agent, DIP Lender, and Indenture Trustee shall not be responsible for the payment or reimbursement of any fees or disbursements of any professionals retained by the Debtors and/or the Committee incurred in connection with the Cases or any Successor Cases.    Until the occurrence of a Triggering Event, the allowed Debtors' Professional Fee Payments and Committee's Professional Fee Payments shall be paid in accordance with the Administrative Fee Order (or further order of this Court), subject to the Budget, and any payment made on account of the Debtors' Professional Fee Payments or the Committee's Professional Fee Payments on account of the Pipeline Period shall not reduce the Carve Out Amount.    Except for funding the Carve Out Amount as provided above (to the extent there are not sufficient funds in the Professional Fee Account), nothing in this Final Order or otherwise shall be construed: (i) to obligate the DIP Agent, DIP Lender, or Indenture Trustee in any way to pay compensation to, or to reimburse expenses of, any professionals retained by the Debtors or the Committee, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out Amount if actual Debtors' Professional Fee Payments and Committee's Professional Fee Payments incurred after or due and owing as of a Triggering Event exceed the Carve Out Amount; (iii) as consent to the allowance of any professional fees or expenses of any professionals retained by the Debtors or the Committee; or (iv) to affect the right of the DIP Agent or Indenture Trustee to object to the allowance and payment of such fees and expenses.

(c)    In consideration of the Debtors' acknowledgement of the debt due and owing to the Indenture Trustee, the Debtors' waiver of any claims under section 506(c) or section

552(b) of the Bankruptcy Code or otherwise, and in exchange for the agreement that the Debtors, Debtors' professionals, and other professionals retained in these Cases shall not seek any further reduction in, carve-out from, or lien waivers with respect to the Prepetition Bond Collateral or the Post-Petition Bond Collateral, the Indenture Trustee consents to the Carve Out.  Except for the Carve Out, no costs or expenses of administration shall be imposed against the Indenture Trustee, the Prepetition Bond Collateral or Post-Petition Bond Collateral under Sections 105, 506(c) or 552(b) of the Bankruptcy Code or otherwise.

31.    *Limitations on the DIP Financing, DIP Collateral, and Carve Out*.  The DIP Financing, DIP Collateral, Carve Out and proceeds thereof may not be used: (a) in connection with or to finance any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the DIP Agent's rights and remedies under the DIP Documents or this Final Order, as applicable, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors or the Committee in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations, (iii) for monetary, injunctive or other affirmative relief against the DIP Agent or DIP Lender or its collateral contrary to the DIP Documents or this Final Order, or (iv) preventing, hindering or otherwise delaying the exercise by the DIP Agent of any rights and/or remedies permitted under this Final Order, the DIP Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent upon any of the DIP Collateral; (b) to make any distribution under a plan of reorganization in any of the Cases while the DIP Documents remains in effect or any DIP Obligations remain outstanding; (c) to make any payment

in excess of $50,000 in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consents required under the DIP Documents; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors without the prior written consents required under the DIP Documents; (e) to object to, contest, or interfere with in any way the DIP Agent's enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred, except as to any challenge as to the occurrence of such an Event of Default as provided for herein; (f) to sell or otherwise dispose of DIP Collateral without the consents required under the DIP Documents or this Final Order; (g) to use or seek to use any insurance proceeds constituting DIP Collateral other than as set forth in the DIP Documents; (h) to incur Debt (as defined in the DIP Credit Agreement) outside the ordinary course of business without the prior consents required under the DIP Documents; (i) to object to or challenge in any way the claims, liens, or interests (including interests in the DIP Collateral) held by or on behalf of the DIP Agent; (j) to assert, commence or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the DIP Agent or DIP Lender; (k) to prosecute an objection to, priority, or enforceability of any of the DIP Obligations or DIP Liens or any other rights or interests of DIP Agent or DIP Lender; or (l) to prevent (or attempt to prevent), hinder or otherwise delay the exercise by the DIP Agent of any rights and remedies granted under this Final Order.

32.     _Prohibited Use of Cash Collateral_.    Notwithstanding anything herein to the contrary, no proceeds of Cash Collateral, proceeds of Prepetition or Post-Petition Bond Collateral, or advances from the DIP Lender shall be used for the purpose of: (a) objecting to, or contesting in any manner, or raising any defenses to, the validity, amount, extent, perfection, priority, or enforceability of the Bonds, the Prepetition Bond Collateral, the Post-Petition Bond Collateral, the

Bond Claim, the Emergency Advances or any liens or security interests with respect thereto, or

any other rights or interests of the Indenture Trustee therein; (b) asserting any claims, defenses or

causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy

Code, against the Indenture Trustee or any holder of the Bonds, including with respect to

payments made pursuant to the Bond Documents; (c) asserting any other claims, defenses or

causes of action against the Indenture Trustee or any holder of the Bonds or their respective

agents, affiliates, subsidiaries, directors, office, representatives, attorneys or advisors;

(d) preventing, hindering or otherwise delaying the Indenture Trustee's assertion, enforcement or

realization on the Prepetition Bond Collateral or Post-Petition Bond Collateral; (e) seeking to

modify any of the rights granted to the Indenture Trustee hereunder; (f) paying any amounts not

otherwise provided for in the Budget; (g) invalidating, setting aside, avoiding or subordinating, in

whole or part, any of the Indenture Trustee's liens on any Prepetition Bond Collateral or Post-

Petition Bond Collateral; or (h) modifying the Indenture Trustee's  or any holder of the Bonds

rights hereunder; provided, however, that nothing in this Paragraph shall limit the ability of the

Committee's professionals to use any such proceeds to review and analyze the Bond Claim, the

Emergency Advances or the amount, validity, extent, priority, perfection, or enforceability of the

Indenture Trustee's prepetition security interests, or to otherwise determine the existence of any

Committee Challenge (defined below), up to an amount of $50,000.

33.    *No Third Party Rights*.  Except as explicitly provided for herein, this Final Order

does not create any rights for the benefit of any third party, creditor, equity holder or any direct,

indirect, or incidental beneficiary.

34.    *No Deemed Control*.

(a)    *By DIP Agent and DIP Lender.*  In making decisions to advance any

extensions of credit under the DIP Financing, or in taking any other actions related to this Final

Order or the DIP Documents (including, without limitation, the exercise of its approval rights with respect to any budget), the DIP Agent and DIP Lender shall have no liability to any third party and shall not be deemed to be in control of the operations of Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors (as such term, or any similar terms, are used in the Internal Revenue Code, the United States Comprehensive Environmental Response, Compensation and Liability Act as amended, or any similar federal or state statute), and the DIP Agent's relationship with the Debtors shall not constitute or be deemed to constitute a joint venture or partnership of any kind.

(b)    *By Indenture Trustee*.  The Indenture Trustee shall not be deemed to be in control of the operations of  the Debtors or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms or any similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar Federal or state statute) with respect to the operation or management of Debtors, notwithstanding its consent to this Final Order and extending financial accommodations of any type, kind or nature under this Final Order.

35.    *Section 506(c) Claims and Waiver*.

(a)    All rights to surcharge any DIP Collateral, Prepetition Bond Collateral or Post-Petition Bond Collateral under sections 105 or 506(c) of the Bankruptcy Code shall be and hereby are finally and irrevocably waived, and such waiver shall be binding upon the Debtors, their successors, and all parties in interest in these Cases.

(b)    Subject to Paragraph 42 of this Final Order, the approval of this Final Order by the Court shall be a conclusive and binding determination on all parties: (i) of the amount of the Bond Claim and Emergency Advances; and (ii) that the Indenture Trustee's security interests in the Prepetition Bond Collateral, including, without limitation, the Cash Collateral, have been

duly perfected and are in all respects valid and enforceable first priority security interests and liens and not subject to any claim under Bankruptcy Code section 552(b) or otherwise.

36.     _Release and Waiver of Claims Against Indenture Trustee_.  Subject to Paragraph 42 of this Final Order, the Debtors hereby waive, release, and discharge the Indenture Trustee and all holders of the Bonds and their respective affiliates, agents, attorneys, officers, directors and employees (the "**Releasees**"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, the Bonds and the Bond Documents, any aspect of the prepetition relationship between the Indenture Trustee, and/or all holders of the Bonds, and the Debtors, and any other acts or omissions by the Indenture Trustee and/or all holders of the Bonds prepetition relationship with the Debtors (collectively, the "**Released Claims**").  Further, the Debtors waive any and all rights to object to or contest the amount of the Bond Claim and Emergency Advances or the amount, validity, extent, priority, perfection, or enforceability of the Indenture Trustee's security interests in the Prepetition Bond Collateral and the Debtors agree that all such claims and security interests have been duly perfected and are in all respects valid and enforceable first priority security interests and liens.

37.     _No Marshaling/Applications of Proceeds_.  Neither the DIP Agent nor DIP Lender shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral and proceeds shall be received and applied pursuant to the DIP Documents.

38.     _Joint and Several Liability_.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Documents.

39.    _Discharge Waiver_.    The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.    Unless otherwise agreed to by the DIP Agent, none of the Debtors shall file or support any filed plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or sale, of all DIP Obligations and the cancellation, backing, or cash collateralization of all letters of credit issued under the DIP Documents.

40.    _Rights Preserved_.    Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, the Debtors, the Committee, the Indenture Trustee, the Equipment Lessors, and APP are preserved.

41.    _No Waiver by Failure to Seek Relief_.    The failure of the DIP Agent or either the Indenture Trustee and APP, as the case may be, to seek relief or otherwise exercise its rights and remedies under this Final Order, the DIP Documents (in the case of the DIP Agent), applicable prepetition claims (in the case of the Indenture Trustee and APP) or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent, Indenture Trustee, or such APP, including: (a) the Indenture Trustee's right to assert at some later time that its liens and security interests in the Prepetition Bond Collateral are not being adequately protected within the meaning of section 361 of the Bankruptcy Code; and (b) any APP's right to assert at some later time that their liens and security interests in the Prepetition Collateral are not being adequately protected within the meaning of section 361 of the Bankruptcy Code.

42.     *Binding Effect of Final Order*.   Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agent, Indenture Trustee and APP, all other creditors of any of the Debtors or the Committee, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case; provided, however, that this Final Order is without prejudice to the rights of the Committee to challenge the validity, amount, perfection, priority, extent or enforceability of the Bond Claim, the Emergency Advances or the pre-petition security interests of the Indenture Trustee or to commence any claim or action against any Releasees relating to the Released Claims (a "**Committee Challenge**").   Any Committee Challenge must be made on or before February 21, 2014, or such later date as may be agreed to in writing by the Indenture Trustee, after which time any such challenges shall be deemed finally and conclusively barred; provided, however, if one or more claims are timely made under this Paragraph and properly filed, then except for such timely and properly filed claim(s), all other potential claims and causes of action of any kind or nature against the Releasees are hereby deemed forever waived and relinquished; provided further, however, for the avoidance of doubt, nothing in this Final Order shall serve as a determination (or limit the determination) of whether the Indenture Trustee is oversecured, undersecured or fully secured with respect to the Bond Claim and the Emergency Advances, and the rights of all parties are preserved with respect thereto until confirmation of a plan of reorganization or liquidation for the Cases or such earlier date as may be established by this Court.   The Indenture Trustee reserves any and all defenses, claims, and counterclaims, with respect to any such challenge.   The Committee is hereby granted standing to file any Committee Challenge.

43. _No Competing Liens_. Except as set forth in this Final Order, the Debtors shall not grant liens on, or security interests in the Prepetition Bond Collateral or the Post-Petition Bond Collateral to any other party, pursuant to section 364 of the Bankruptcy Code or otherwise.

44. _No Modification of Final Order_. Until and unless the DIP Obligations have been indefeasibly paid in full in cash, and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly: (a) without the prior written consents required in the DIP Documents: (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims, other than the Carve Out; and (b) without the prior written consents required under the DIP Documents, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens. The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent. Further, the Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent of the Indenture Trustee, to the extent such amendment, modification or extension affects the use of the Cash Collateral, the adequate protection provided to the Indenture Trustee, or the rights and claims of the Indenture Trustee under this Final Order; and, no such consent shall be implied by any other action, inaction or acquiescence of the Indenture Trustee.

45.    _Final Order Controls_.   In the event of any inconsistency between the terms and conditions of the DIP Documents or this Final Order, the provisions of this Final Order shall govern and control.

46.    _Survival_.   The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) to the extent authorized by law, dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.   The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent, the Indenture Trustee and APP pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order.   The terms and provisions concerning the indemnification of the DIP Agent shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the repayment of the DIP Obligations.   If any or all of the provisions of this Final Order are, at any time, modified, vacated or stayed, such stay, modification or vacation shall not affect the validity, extent, priority and enforceability of any lien, priority, or other benefit conferred under this Final Order prior to such stay, modification, or vacation.

47.    _Governmental Authorities_.

(a)    Notwithstanding anything to the contrary herein, nothing in this Final Order shall modify any right of the Department of Health and Human Services and the Center for Medicare and Medicaid Services to administer the Debtors' Medicare provider agreements in accordance with federal law.

(b)     Except as expressly provided herein, nothing contained in this Final Order shall impair or modify any rights, claims or defenses available in law or equity to the IRS.

(c)     If at any time the Debtors anticipate that the cash flows from the Debtors' operations will be insufficient to fund non-insider payroll for any given week, the Debtors will notify the U.S. Attorney, the State of New York Office of the Attorney General, the DIP Agent and the Indenture Trustee at least three (3) days in advance of such payroll coming due.

(d)     Notwithstanding anything in this Final Order or in the DIP Credit Agreement to the contrary, the DIP Agent shall not have a power of attorney with respect to any Medicare payments or receivables due to the Debtors.

48.     *Certain Equipment Lessors*.  Notwithstanding anything contained in this Final Order or the DIP Documents to the contrary, the DIP Liens and Supplemental Lien shall be junior in payment and priority to any interests, liens and security interests of Siemens Financial Services, Inc., De Lage Landen Financial Services, Inc., or Philips Medical Capital, LLC (collectively, the "**Equipment Lessors**") solely with respect to the equipment leased or financed (collectively, the "**Leased Equipment**")[6] to the Debtors by each Equipment Lessor pursuant to those certain equipment leases referenced in *Siemens Financial Services, Inc.'s Limited Objection to Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Post-Petition Secured Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and (B) to*

_____

[6] For the avoidance of doubt, the Leased Equipment means and is limited to: (a) an Allura Xper FD20 System, an XperGuide, a Medrad Provis Rack mount, and all components, additions, upgrades and related equipment or property provided by Philips Medical Capital, LLC with respect to such equipment; (b) an Intuitive daVinci Si with Firefly Fluorescence Imaging surgical system, a skills simulator, a vessel sealer generator kit, a single site, an initial stocking order, and all components, additions, upgrades and related equipment or property provided by De Lage Landen Financial Services, Inc. with respect to such equipment; (c) two GE Healthcare C-Arms, Model 9900 and all components, additions, upgrades and related equipment (including 15AMP Workstations and a 9900 CVI USA Elite); and (d) the proceeds of the sale of any or all of the foregoing, as applicable.

*Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to Pre-Petition Indenture Trustee and Miscellaneous Secured Creditors Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c) and Joinder in Objection Filed by Other Secured Creditors* [Dkt. No. 159] and the *Joinder of De Lage Landen Financial Services, Inc., and Philips Medical Capital, LLC, to the Objections of Columbia SFH, L.L.C., M&T Bank and Siemens Financial Services, Inc. to Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Debtors (A) to Obtain Post-Petition Secured Superpriority Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, and 364 and (B) to Utilize Cash Collateral Pursuant to 11 U.S.C. § 363; (II) Granting Adequate Protection to Pre-Petition Indenture Trustee and Miscellaneous Secured Creditors Pursuant to 11 U.S.C. §§ 361, 362, 363 and 364; and (III) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c)* [Dkt. No. 165], respectively; <u>provided</u>, <u>however</u>, the DIP Liens shall be senior in priority to the Equipment Lessors' liens and security interests to the extent such liens and security interests attach to or encumber any assets of the Debtors other than the Leased Equipment, including proceeds generated by the Debtors' use (but not the sale) of the Leased Equipment.

49.    <u>*Columbia SFH, L.L.C., Dutchess County Industrial Development Agnency and Column Financial, Inc.*</u>  Notwithstanding anything in this Final Order or the DIP Documents to the contrary, the DIP Liens shall not prime, or otherwise be senior in priority or payment to the liens and security interests granted by Columbia SFH, L.L.C. ("***Columbia***") and Dutchess County Industrial Development Agency ("***DCIDA***") to Column Financial, Inc. and its successors and assigns (collectively, "***Column***") on (a) that certain leasehold estate pursuant to that certain Ground Lease Agreement dated as of April 1, 1999 between St. Francis and Columbia (as the same may have been amended, supplemented or otherwise modified from time to time, the "***Ground Lease***"), (b) that certain leasehold estate pursuant to that certain Lease Agreement dated

as of May 27, 1999 between DCIDA and Columbia (as the same may have been amended, supplemented or otherwise modified from time to time), and (c) all structures, buildings and improvements located or placed on the foregoing, all as more fully described in that certain Mortgage and Security Agreement, and Consolidation, Modification and Restatement Agreement, dated as of July 7, 2005 (as the same may have been amended, supplemented or otherwise modified from time to time); provided, however, the DIP Agent, for the benefit of the DIP Lender, shall maintain a first priority security interest in and lien on all interests of the Debtors in or pursuant to any and all leases with Columbia, DCIDA and Column, as applicable, as set forth in the DIP Credit Agreement.  In the event DIP Agent succeeds to the rights of the Debtors with respect to the Ground Lease: (a) so long as the Ground Lease is in full force and effect and Columbia is not in default under the Ground Lease after applicable grace and cure periods, DIP Agent: (i) shall recognize the validity of the Ground Lease and Columbia's possession of the premises leased thereunder shall not be disturbed or interfered with by DIP Agent (or its successors or assigns) in the exercise of any of its rights under this Final Order or the DIP Documents and (ii) shall not terminate Columbia's interests in or estate granted under the Ground Lease; and (b) Columbia shall attorn to DIP Agent or its successors or assigns and the Ground Lease shall continue in full force and effect as a direct lease between Columbia and the DIP Agent or its successors or assigns; provided,  however, that in no event shall the DIP Agent or its successors or assigns be: (i) liable for any act, omission, default, misrepresentation or breach of warranty of any previous landlord, including the Debtors, or obligations accruing prior to DIP Agent's succession to the rights of the Debtors under the Ground Lease unless such liability is continuing and there is a reasonable opportunity to cure; or (ii) subject to any offset, defense, claim or counterclaim which Columbia might be entitled to assert against any previous landlord, including the Debtors.

50.     _Enforceability_.  The Clerk of the Court is hereby directed to forthwith enter this Final Order on the docket of this Court maintained in regard to the Cases.  This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable _nunc pro tunc_ to the Petition Date immediately upon execution hereof. To the extent necessary, findings of fact shall be deemed conclusions of law, and conclusions of law shall be deemed findings of fact.

51.     _Waiver of Any Applicable Stay_.   Any applicable stay (including, without limitation, any stay under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Final Order.

52.     _Headings_.  The headings of this Final Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Final Order.

53.     _Notices_.   All notices, requests, demands, waivers and other communications required or permitted to be given under this Final Order shall be in writing and shall be deemed to have been duly given if (a) delivered personally, (b) mailed by first-class, registered or certified mail, return receipt requested, postage prepaid, or (c) sent by next-day or overnight mail or delivery or (d) sent by facsimile.

                    i.    If to the Debtors to:

                        Kristin Cash-Holland
                        Chief Financial Officer
                        Saint Francis Hospital
                        241 North Road
                        Poughkeepsie, NY 12601
                        Fax: (845) 485-3762
                        Email: kcash@sfhhc.org

                        with a copy to:

                        Daniel W. Sklar, Esq.
                        Nixon Peabody LLP
                        437 Madison Avenue
                        New York, NY 10022

Fax: (212) 940-3111
Email: dsklar@nixonpeabody.com

ii.   If to the DIP Agent or DIP Lender:

Katie G. Stenberg, Esq.
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Fax: (615) 244-6804
Email: katie.stenberg@wallerlaw.com

iii.   If to the Indenture Trustee to:

Aaron G. McManus, CCTS
Vice President
Manufacturers and Traders Trust Company
One M&T Plaza - 7th Floor
Buffalo, NY 14203-2399
Fax: (716) 842-4474
Email: amcmanus@mtb.com

with a copy to:

Daniel S. Bleck, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
Fax: 617-542-2241
Email: dsbleck@mintz.com

iv.   If to the Committee to:

Craig Freeman, Esq.
Alston & Bird LLP
90 Park Avenue
New York, NY 10016
Fax: (212) 922-3891
Email: craig.freeman@alston.com

54.    _Retention of Jurisdiction_.  The Court has and will retain jurisdiction to enforce this

Final Order according to its terms.

No Objection:

By:  /s/ Eric J. Small, Esq.
United States Trustee's Office
Region 2

No Objection:

 /s/ Craig E. Freeman
Craig E. Freeman
Martin G. Bunin
Alston & Bird LLP
90 Park Avenue
New York, New York 10016
_Proposed Counsel to the Official Committee of
Unsecured Creditors_

No Objection:

/s/ Daniel S. Bleck
Mintz Levin Cohn Ferris Glovsky
and Popeo, P.C.
Daniel S. Bleck
One Financial Center
Boston, Massachusetts, 02111
_Attorneys for Manufacturers and Traders Trust
Company, as Indenture Trustee_

/s/ Cecelia G. Morris



_____
**Dated: February 5, 2014**          **Hon. Cecelia G. Morris**
        **Poughkeepsie, New York**          **Chief U.S. Bankruptcy Judge**